**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DAVID BRAMAN and MELISSA DUNN, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>GPD HOLDINGS, LLC d/b/a CoinFlip, and CF PREFERRED LLC d/b/a Olliv,<br><br>Defendants. | Case No.: 1:23−cv−15656<br><br>Hon. Gabriel A. Fuentes |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiffs David Braman and Melissa Dunn ("Plaintiffs") hereby submit this Unopposed Motion for Final Approval of Class Action Settlement and Memorandum in Support Thereof.[1]

## I. INTRODUCTION

Plaintiffs achieved substantial relief for Settlement Class Members in the form of a settlement ("Settlement") that requires Defendants GPD Holdings, LLC d/b/a CoinFlip, and CF Preferred LLC (now discontinued and merged into GDP Holdings, LLC) and formerly d/b/a Olliv (collectively "CoinFlip" and "Defendants") to pay Four Hundred and Seventy-Five Dollars ($475,000) into a non-reversionary settlement fund. Additionally, pursuant to the settlement agreement, Defendants have implemented certain cybersecurity enhancements.

Perhaps the best barometer of the fairness of a settlement is the response of class members. Here, such response is overwhelmingly positive. Notice of the Settlement has been sent in accordance

[1] The Settlement Agreement ("SA") in its entirety is attached as Exhibit 1 to the Declaration of Bryan F. Aylstock ("Aylstock Decl.") filed herewith. Capitalized terms shall have the same meaning as assigned to them in the Settlement Agreement.

with this Court's Order Granting Preliminary Approval (Dkt. No. 96) ("Preliminary Approval Order"), and the claims, exclusion, and objection deadlines have passed. In total, 572 valid claims have been submitted timely for a cash payment. If the Settlement were to be approved as requested, California Consumer Privacy Act payment claimants would receive approximately $934.20 as a class payment with payments to other class members ranging from $25 to over $3,600. This is significant relief. Additionally, only one request for exclusion was received and there were no objections to the settlement.

For the reasons set forth in this memorandum, Plaintiffs respectfully request that the Court grant final approval to the settlement by: (1) approving the proposed Settlement Agreement as fair, adequate, and reasonable for the certified Settlement Class; (2) determining that adequate notice was provided to the Settlement Class; (3) approving payment to the claims administrator, capped at $98,000; (4) approving Class Counsel's requested attorneys' fees of $158,333.33; and (5) approving an award of $10,000 each to Plaintiffs for their service as Class Representatives.

## II. CASE SUMMARY

### A. The Data Security Incident

At the time of the data security incident, CoinFlip had a network 4,360 cryptocurrency ATM kiosks throughout the US, Puerto Rico, and via subsidiaries Canada, and offers a platform where over 400,000 of its customers can buy, sell, trade or store cryptocurrencies.[2] Plaintiffs' allege CoinFlip failed to properly secure and safeguard the personally identifiable information provided by customers, including Plaintiff and Class Members, including, without limitation, their full name, addresses, and state-issued driver's license number. ("PII").[3]

[2] Olliv, *About*, https://www.olliv.com/about (last accessed Nov. 3, 2023); CoinFlip, *About*, https://www.coinflip.tech/about (last accessed Nov. 3, 2023)

[3] CoinFlip, *Notice of Data Breach*, https://oag.ca.gov/system/files/CoinFlip%20-%20California%20Draft%20Notice%20Letter%20to%20Individuals.pdf (last accessed Nov. 3, 2023).

On information and belief, this Data Security Incident was engineered and targeted at accessing and exfiltrating the PII of Plaintiffs and Class Members in order for criminals to use that information in furtherance of theft, identity crimes, and fraud. The aggregate information acquired by cybercriminals in this Data Security Incident can be used to commit fraud against Plaintiff and Class Members as well as steal their identities.

**B. Plaintiff's Complaint**

On or about November 6, 2023, Plaintiff David Braman, through his counsel, filed a class action based on the Data Security Incident against Defendants in this Court, ECF No. 1, which was subsequently amended on April 5, 2024, to add Melissa Dunn as a Plaintiff and Class Representative, ECF No. 45. Plaintiffs allege claims of violation of California's Unfair Competition Law, California's Consumer Legal Remedies Act, California's Consumer Privacy Act, negligence, intentional misrepresentation, breach of express contract, breach of implied contract, and unjust enrichment. *Id.* at p. 2-38. Plaintiffs seek equitable relief enjoining Defendants from engaging in the wrongful conduct complained of and compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety. *Id.* at ¶¶ 6, 145. Plaintiffs further seek monetary relief, including actual damages, statutory damages, restitution, disgorgement, attorney's fees, statutory costs, and such other and further relief as is just and proper. *Id.* at p. 39.

Soon after Plaintiff filed her Class Action Complaint, the Parties, by and through their respective counsel, began discussing the possibility for early resolution.[4] The Parties agreed that an early resolution was warranted. Over the next few months, the Parties engaged in extensive arm's length settlement negotiations.[5] Negotiations included a significant exchange of information, allowing both Parties to evaluate the strengths and weaknesses of Plaintiff's claims and Defendants' defenses.[6]

---

[4] Aylstock Decl., ¶ 20.
[5] *Id.*
[6] *Id.*

On May 22, 2024, the parties engaged in a full-day mediation session with a qualified, neutral third-party mediator. The parties reached a settlement in principle at the mediation, and over the next few months, the Parties diligently negotiated, drafted, and finalized the settlement agreement, notice forms, and came to an agreement on a claims process.[7] The Settlement Agreement ("SA") was finalized by the Parties on January 11, 2025, and is attached in full as Exhibit 1 to the Declaration of Bryan F. Aylstock, filed herewith. It is the opinion of Plaintiff and proposed settlement class counsel, based on their experience and investigation, that the Settlement Agreement presents a favorable result for the Class.[8]

## III. SUMMARY OF SETTLEMENT

### A. Settlement Benefits

Under the proposed Settlement, Class Members shall have an opportunity to submit a claim for reimbursement of out-of-pocket losses, lost time, transaction losses, and a cash payment to California Subclass Members due to the California Consumer Privacy Act ("CCPA") claim available to them as California residents.[9] Furthermore, under the Settlement Agreement, Defendants have implemented certain cybersecurity enhancements.

The Settlement provides for relief for a Settlement Class defined as:

> all 36,646 CoinFlip users in the United States whose data were potentially accessed by the unauthorized third-party(ies) as a result of the August 7, 2023, data breach." Excluded from the Settlement Class are: (1) Defendants, its insurers, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as their attorneys, officers, directors, agents, servants, or employees, and the immediate family members of such persons; (2) the named counsel in the Data Breach Class Action and any employee of their office or firm; (3) the members of the Illinois judiciary; and (4) all Settlement Class Members who timely and validly request exclusion from the Settlement Class. The Class is established herein for settlement purposes only. Nothing herein constitutes an admission or waiver by Defendants as to the existence of a Class outside the terms of this Settlement.[10]

[7] *Id*. at ¶ 21.
[8] *Id*. at ¶¶ 22-23.
[9] S.A. at 11-13.
[10] *Id.* at 9-10.

The Settlement also provides relief for a California Resident Settlement Sub-Class defined as:

> all CoinFlip users who are residents of the State of California and whose data were potentially accessed by the unauthorized third-party(ies) as a result of the August 7, 2023 data breach. Excluded from the California Resident Settlement Sub-Class are: (1) Defendants, its insurers, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as their attorneys, officers, directors, agents, servants, or employees, and the immediate family members of such persons; (2) the named counsel in the Data Breach Class Action and any employee of their office or firm; (3) the members of the Illinois judiciary; and (4)all California Resident Settlement Sub-Class who timely and validly request exclusion from the Settlement Class. The Class is established herein for settlement purposes only. Nothing herein constitutes an admission or waiver by Defendants as to the existence of a Class outside the terms of this Settlement.[13][11]

**1. Monetary Relief**

Under the terms of the Settlement Agreement, Defendants or their insurer(s) will pay $475,000.00, from which all monetary compensation to the Settlement Class and attorneys' fees and expenses, Settlement Administration Costs and Expenses, and Service Awards shall be paid, including the cost of any CAFA Notice.[12] Subject to the Court's approval, Plaintiffs will each be paid an incentive award from the Settlement Fund of $10,000.00 for representing the Settlement Class.[13] Subject to the Court's approval, Class Counsel will be paid one third of the Settlement Fund ($158,333.33) as attorneys' fees, plus out-of-pocket expenses from the Settlement Fund, including the cost of issuing the notice and claims administration, not to exceed $10,000.00.[14]

Settlement Class Members can submit a claim for Out-of-Pocket Losses, which provides for up to $2,500.00 per person reimbursement of documented ordinary losses.[15] Additionally, Class Members can submit a claim for compensation for up to three (3) hours lost time spent researching the Data Security Incident, calculated at the rate of $25.00 per hour.[16] All Settlement Class Members may also submit a

[11] *Id.* at 3-4.
[12] *Id.* at 10.
[13] *Id.* at 15
[14] *Id.* at 15
[15] *Id.* at 17
[16] *Id.* at 12.

claim for reimbursement for Transaction Losses,[17] which are financial losses incurred by the Settlement Class Member as a direct result of the Data Security Incident.[18] Such losses must be supported by documentation that ties the loss to the Data Security Incident, and Settlement Class Members may claim up to $5000 in Transaction Losses.

Finally, California Settlement Subclass Members may submit a claim for an additional cash payment due to the CCPA claim available to them as California residents.[19] The CCPA Payment is in addition to the Settlement benefits available to all Settlement Class Members.[20]

**2. Additional Security Measures**

In addition to the monetary relief provided, Defendants have represented that they have implemented security measures, which include: (1) enhanced multi-factor authentication processes; (2) expanded security monitoring capabilities; and (3) reduced potential access points to CoinFlip's environment through enhanced technical controls.[21]

**3. Release**

The release is tailored to claims arising out of or relating to the allegations of the Data Breach Class Action complaint.[22] Class Members who do not exclude themselves from the Settlement Agreement will relinquish and discharge Defendants and their respective past or present directors, officers, employees, principals, agents, attorneys, insurers, predecessors, heirs, successors, parents, subsidiaries, divisions and related or affiliated entities, from any and all claims, demands, debts, liabilities, actions, causes of action of every kind and nature, obligations, damages, losses, and costs, whether known or unknown, actual or potential, suspected or unsuspected, direct or indirect, contingent or fixed, that have been, could have been, or in the future might be asserted that arise out

[17] *Id*. at 11.
[18] *Id*. at 10.
[19] *Id*. at 4-5.
[20] *Id*. at 12.
[21] *Id*. at 14-16.
[22] *Id*. at 21.

of or relate to the allegations of the Data Breach Class Action.[23]

### B. Fees, Costs, and Service Awards

The Settlement Agreement calls for a reasonable service award to Plaintiffs in the amount of $10,000.00.[24] The Service Award is meant to compensate Plaintiffs for their efforts on behalf of the Class, including maintaining contact with counsel, assisting in the investigation of the case, reviewing the Complaint, remaining available for consultation during the settlement negotiations, reviewing the Settlement Agreement, and answering counsel's questions.[25] Class Counsel will be paid one third of the Settlement Fund ($158,333.33) as attorneys' fees, plus out-of-pocket expenses from the Settlement Fund, including the cost of issuing the notice and claims administration, not to exceed $10,000.[26]

## IV. THE NOTICE AND CLAIMS PROCESS

### A. Settlement Class Members Received the Best Notice Practicable which was Dutifully Executed by Kroll in Accordance with this Court's Preliminary Approval Order

This Court already preliminarily determined that the notice program provides due and sufficient notice to the Settlement Class, fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23 and constitutes the best notice practicable under the circumstances. Dkt. No. 96. Settlement Administrator, Kroll, dutifully executed the notice program. *See* generally Declaration of Patrick M. Passarella ("Passarella Decl.").

On February 19, 2025, Kroll received one (1) data file from the Defendants. The file contained 37,151 names and mailing addresses. Kroll undertook several steps to review the Class List for the mailing of the Class Notice. Kroll performed data clean up steps including removing 545 duplicate records and standardizing addresses for mailing, resulting in 36,606 unique records. Passarella Decl. at ¶5.

---

[23] *Id.*
[24] *Id.* at 15.
[25] *Id.*
[26] *Id.*

Additionally, to ensure that Class Notices would be deliverable to Settlement Class Members, Kroll ran the Class List through the USPS's National Change of Address ("NCOA") database and updated the Class List with address changes received from the NCOA. *Id*.

On May 16, 2025, Kroll created a dedicated Settlement Website entitled www.cryptobreachsettlement.com. The Settlement Website "went live" on May 16, 2025, and contains a summary of the Settlement, important dates and deadlines, contact information for the Settlement Administrator, answers to frequently asked questions, downloadable copies of relevant documents, including the First Amended Class Action Complaint, Settlement Agreement, Preliminary Approval Order, Class Notice, long form Notice, and Claim Form, and allowed Settlement Class Members an opportunity to file a Claim Form online. Passarella Decl. at ¶6.

On February 10, 2025, Kroll established a toll-free telephone number, (833) 421- 9696, for Settlement Class Members to call and obtain additional information regarding the Settlement through an Interactive Voice Response ("IVR"). Passarella Decl. at ¶7. As of September 8, 2025, the IVR system has received 580 calls. *Id*.

On May 16, 2025, Kroll caused the mailing of 36,606 Class Notices via first-class mail. A true and correct copy of the Class Notice, as well as the long form Notice and Claim Form. Passarella Decl. at ¶9. On July 3, 2025, Kroll caused the mailing of 36,298 reminder notices to Settlement Class Members who had not submitted a Claim Form or opted out of the Settlement. *Id*.at ¶10.

Kroll then engaged in a process of remailing, including performing advanced address searches, for all Class Notices that were returned. Passarella Decl. at ¶¶11-12. Following all Class Notice re-mailings, Kroll has reason to believe that Class Notices likely reached 34,402 of the 36,606 Settlement Class Members, which equates to a reach rate of the direct mail notice of approximately 93.98%. *Id*.at ¶13.

This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign. Passarella Decl. at ¶13.

### *a.* The Claim Process Demonstrates that the Class Reacted Favorably to the Settlement

The claim deadline, objection deadline and opt-out period were July 15, 2025. Passarell a ¶14, 20. There were 572 validly submitted claim forms. *Id*. at ¶17. There were no objections to the settlement and only one request for exclusion. *Id*.at ¶ 22.

## V. LEGAL STANDARD

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citing *E.E.O.C. v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 888–89 (7th Cir. 1985)). Under Rule 23, a court's inquiry is whether the settlement is "lawful, fair, reasonable and adequate." *Uhl v. Thoroughbred Tech. & Telecomm., Inc*., 309 F.3d 978, 986 (7th Cir. 2002) (citing *Isby*, 75 F.3d at 1198-99). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class are better served by the settlement than by further litigation." Manual for Complex Litigation (FJC) § 21.61 (updated 2017).

In evaluating a settlement, a district court must consider "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby*, 75 F.3d at 1199); *see also Martin v. Reid*, 818 F.3d 302, 306-307 (7th Cir. 2016) (same at 1196-97). "The 'most important factor relevant to the fairness of a class action settlement' is the first one listed: 'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel*, 463 F.3d at 653 (quoting *In re General Motors Corp. Engine Interchange Litig*., 594 F.2d 1106, 1132 (7th Cir. 1979)).

The court also "must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less

compensation will be received by the class members." *Redman v. RadioShack Corp*., 768 F.3d 622, 629 (7th Cir. 2014). The court evaluating the settlement is "a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY, Inc.,* 772 F.3d 778, 780 (7th Cir. 2014) (citing *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 280 (7th Cir. 2002)).

## VI. ARGUMENT

### A. The Terms of the Settlement are Fair, Reasonable, and Adequate

#### 1. *The Settlement was negotiated at arms' length and is absent of any collusion.*

Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that "the proposal was negotiated at arm's length." Here, as in *Wong v. Accretive Health, Inc*., a settlement "was reached through extensive arm's-length negotiations with an experienced thirdparty mediator," during which "the parties positions on liability and damages were extensively briefed and debated" and that the defendant "was prepared to vigorously contest the lawsuit, having raised potentially valid defenses." 773 F.3d 859, 864 (7th Cir. 2014). Many of the same reliable indicators of a reasonable, negotiated settlement are present here. Both Parties were represented by experienced counsel, and the settlement was only reached after months of arm's length negotiations. As in *TikTok*, *Inc., Consumer Privacy Litig.,* "[d]efendants have forcefully disputed their liability at every stage, raising a host of factual and legal defenses. The parties have exhaustively analyzed and debated their respective positions as part of their negotiations. And Plaintiffs have reviewed substantial confirmatory discovery..." 565 F.Supp. 3d 1076, 1089 (N.D. Ill. 2021). Accordingly, this factor weighs in favor of preliminary approval.

#### 2. *The relief provided for the class is more than adequate.*

Fed. R. Civ. P. 23(e)(2)(c) requires examination of the relief provided by the Settlement. The instant Settlement negotiated by Class Counsel on behalf of the class provides for significant relief[27].

[27] No additional agreements require identification or examination under Rule 23(e)(3).

Valued at up to a total of $475,000 the Settlement provides for monetary relief, including reimbursement of ordinary losses, out-of-pocket costs, and compensation for lost time, and if they are a member of the California Subclass, a CCPA payment, as well as payment of a Service Award, attorneys' fees and costs to the extent approved by the Court, and administration costs. Additionally, Defendants have agreed to undertake specific data security enhancements ensuring Plaintiff's and Class Member's data is better protected in the future.

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of the case, they also understand that Defendants will assert several potentially case-dispositive defenses. Proceeding with litigation would open Plaintiffs to the risk inherent in trying to achieve and maintain class certification and prove liability. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage).

As Courts in this District have recognized, "[i]n addition to being risky, further litigation in this case—assuming that Plaintiffs' claims survived motions to compel arbitration and dismiss—would almost certainly be complex, lengthy, and expensive." *See In re: TikTok*, 565 F.Supp. 3d at 1091; *see also Wong*, 773 F.3d at 864. Class certification is another hurdle that would have to be met— and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 27-8 (D. Me. 2013).

Moreover, the Settlement terms are consistent with, and in fact better than, agreements in other similar data breach cases, across the country. *See e.g., Baksh et al. Ivy Rehab Network, Inc.* No. 7:20-CV-01845 (S.D.N.Y.) (providing up to $75 per class member out of pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit

monitoring for claimants; and equitable relief in the form of data security enhancements); *Rutledge et al v. Saint Francis Healthcare System*, No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Class Members in the form of: reimbursement up to $180 of out of pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and data security enhancements).

As the relief provided is well within the range of possible approval when considered in light of the Rule 23(e)(2)(c)(i)-(iv) factors, preliminary approval should be granted.

### 3. *Plaintiff and Proposed Class Counsel have adequately represented the Class*

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and Class Counsel have adequately represented the class, including the nature and amount of discovery undertaken in the litigation. *See* Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes. Here, Plaintiffs have maintained contact with counsel, assisted in the investigation of the case, reviewed the Complaint, remained available for consultation throughout settlement negotiations, reviewed the Settlement Agreement, and been responsive to answering counsel's many questions.[28] Plaintiffs do not have any conflicts with the proposed class and have adequately represented Settlement Class Members in the litigation.

Proposed Class Counsel has also adequately represented the class. Co-Lead Counsel has extensive experience in class action litigation generally, and data breach cases in particular.[29] In negotiating the Settlement, Co-Lead Counsel was thus well positioned and able to benefit from years of experience and familiarity with the factual and legal bases for this case.

Although formal discovery had not commenced in this case, following mediation and as a condition of settlement, the parties engaged in confirmatory discovery in connection with settlement

[28] Aylstock Decl., ¶ 41.
[29] *Id.* at 7-8

discussions.[30] Proposed Class Counsel carried out a thorough investigation of the claims, and settlement negotiations included a significant exchange of information, allowing both Parties to evaluate the strengths and weaknesses of Plaintiff's claims and Defendants' defenses.[31] Accordingly, Plaintiff and Class Counsel here have adequately represented the Class, and this factor weighs in favor of final approval.

### B. *The Attorneys Fees, Costs and Incentive Awards Sought are Reasonable*

The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("this Court has recognized consistently that [] a litigant or a lawyer who recovers a common fund… is entitled to a reasonable attorney's fee from the fund as a whole."); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit."). The goal is to award counsel "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases).

In common fund cases, unlike fee-shifting cases, courts have discretion to use one of two methods to determine whether counsel's request reflects the market rate for legal services: (1) percentage of the fund; or (2) lodestar plus a risk multiplier. *See, e.g., Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). However, "the approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011).

---

[30] *Id.* ¶ 31.
[31] S.A. at p. 15.

**1. *The percentage-of-the-fund approach is appropriate here.***

Courts in this District have routinely found the percentage-of-the-fund approach superior to the lodestar method for determining the market price for legal services. *Aranda v. Caribbean Cruise Line, Inc.*, No. 12-4069, 2017 WL 1369741, at **2, 9 (N.D. Ill. Apr. 10, 2017) (using percentage-of-the-fund method in TCPA case and declining to apply lodestar analysis); *Wright v. Nationstar Mortg. LLC*, No. 14-1045, 2016 WL 4505169, *17 (N.D. Ill. Aug. 26, 2016) (same); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015) (same).

The percentage-of-the-fund approach is particularly appropriate in consumer class actions because the custom is for counsel and plaintiffs to negotiate "a fee arrangement based on a percentage of the recovery..." *Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act Litig.*), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) ("*Capital One*") (applying percentage-of-the-fund method in TCPA class action). "This is so because fee arrangements based on the lodestar method require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis," which is something that consumer class members "likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493, 501 (N.D. Ill. 2015) (using percentage-of-the-fund method in TCPA class action).

The Seventh Circuit has found that "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank, , N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *see also In re Ready-Mixed Concrete Antitrust Litig.*, No. 05-979, 2010 WL 3282591, at *2 (S.D. Ind. Aug. 17, 2010) ("the 'percentage of the fund' approach to determining reasonable attorneys' fees is favored by the Seventh Circuit is also the most accurate reflection in this case of the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time"); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund method "provides a more effective way of determining

whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998). Counsel and Plaintiffs have created a $475,000 non-reversionary settlement fund that provides real value to the Settlement Class. The preferred and more administratively feasible percentage-of-the-fund method is appropriately used to calculate Counsel's fee for their work to attain that excellent result for the Class.

**2. *The Requested Fee Reflects the Market Rate for Legal Services in this Circuit***

A fee award should "approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (citations omitted). To determine the market rate, courts consider "actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

In this Circuit, it is customary for counsel to negotiate a contingency agreement in the range of 30–40%. *See Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP.*, Case No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding counsel one-third of the common fund). This factor favors approving the fee request for one-third of the net award.

**3. *A Lodestar Cross Check Underscores the Fairness of the Requested Fee.***

**a. *Counsel's Hourly Rates are Reasonable***

Reasonable hourly rates are determined by "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Class Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. *Id.*.

Class Counsel's rates also compare very favorably with rates approved by other trial courts in class action litigation, by what attorneys of comparable skill charge in similar areas of specialization. *See*

*Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 U.S. Dist. LEXIS 67298, at *14-15 (N.D. Cal. May 21, 2015) (finding reasonable rates in a consumer fraud lass action of between $475–$975 for partners, $300–$490 for associates, and $150–$430 for paralegals); *Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 U.S. Dist. LEXIS 161077, at *11 (S.D. Ill. Mar. 31, 2016) (approving hourly rates of $460–$998 for attorneys, $309 for paralegals, and $190 for legal assistants). Finally, Class Counsel have submitted sworn declarations attesting to their hourly rates and that their hourly rates charged here are the same as has been charged in their current cases.

**b. *A Lodestar Cross Check Supports the Fairness of the Fees Requested as the Court would need Apply a Negative Multiplier***

Combined, Class Counsels' firms and other Plaintiffs' firms working on the case collectively report having spent more than 180 hours advancing the litigation and a cumulative lodestar of in excess of $160,000. Approval of the requested award will result in a negative lodestar multiplier—a figure that will be further reduced by the additional work Class Counsel will perform in support of the Settlement in the future. The quality of the work performed by Class Counsel and the quality of the result achieved would have supported the award of a lodestar multiplier. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) (noting that "[a risk] multiplier is, within the court's discretion, appropriate when counsel assume a risk of non-payment in taking a suit" and "[m]ultipliers anywhere between one and four have been approved") (citations omitted)).

Given the negative lodestar multiplier provided by the requested fee, this factor heavily favors approval of the requested award of attorneys' fees. *See, e.g.*, *Hapka v. Carecentrix, Inc.,* No. 2:16-cv-02372-KGG, 2018 U.S. Dist. LEXIS 68186, at *5 (D. Kan. Feb. 15, 2018) (fee award implicating "a negative multiplier (0.87) on Class Counsel's lodestar—is inherently reasonable.) (emphasis added); *Carlin v. DairyAmerica, Inc.*, No. 1:09-cv-04300AWI-EPG, 2019 U.S. Dist. LEXIS 78026, at *44 (E.D. Cal. May 8, 2019) (citing *Schiller v. David's Bridal, Inc.,* 2012 U.S. Dist. LEXIS 80776, at *23 (E.D. Cal. June 11, 2012) (for the proposition that "a negative lodestar multiplier strongly supports the

reasonableness of the fee request)

**c. *Counsel Undertook a Significant Risk Without the Guarantee of a Fee Award***

Courts emphasize the severity of the financial risk class counsel assumed in taking on a class action when determining the reasonableness of a fee request. *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.,* 767 F. Supp. 2d 880, (N.D. Ill 2011); *see also Silverman v. Motorola Solutions, Inc*., 739 F.3d 956, 958 (7th Cir. 2013) ("Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."); *In re Trans Union Corp. Privacy Litig*., 629 F.3d 741, 746 (7th Cir. 2011) ("[I]f the market-determined fee for a sure winner were $1 million the market-determined fee for handling a similar suit with only a 50 percent chance of a favorable outcome should be $2 million") (citations omitted).

Given the reported nature of the Data Breach, Class Counsel knew the expenditure of significant time, effort, and money would likely be needed to achieve a successful resolve litigating this matter to conclusion. They understood Defendant would likely argue that Class Members suffered no damage as a result of the Data Breach and that damages incurred were not traceable to the Data Breach, as opposed to another data breach. Class Counsel also knew that to litigate this matter to conclusion they would need to prevail at the motion to dismiss and class certification stages, at trial, and likely on appeal.

It is difficult to obtain certification of a class in a data breach case and prevailing at trial and on appeal is never guaranteed*. Yvonne Mart Fox v. Iowa Health Sys*., No. 3:18-cv-00327-JDP, 2021 WL 826741 at *13-14 (W.D. Wis. Mar. 4, 2021) ("breach cases . . . are particularly risky, expensive, and complex.") (quoting *Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019))). Accordingly, the significant risk counsel accepted in taking on this matter on a contingency basis weigh strongly in favor of approving the requested award.

**d. *The Requested Cost and Expense Award is Reasonable and Appropriate***

Pursuant to a market-based approach, attorneys who generate a benefit for the class are entitled to recover reasonable litigation expenses incurred to advance the matter. *See Great Neck Capital*

*Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P* (*in Re Harnischfeger Indus., Inc.)*, 212 F.R.D. 400, 412 (E.D. Wis. 2002). Plaintiffs seek reimbursement of $9,068.45 for costs and expenses incurred in furtherance of this litigation. These costs and expenses were incurred in furtherance of the litigation for, *inter alia,* filing and mediation fees.

**e. Incentive Awards to the Class Representatives are Fair and Reasonable**

Incentive awards compensating named plaintiffs for work done on behalf of the class are also routinely granted. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *see also Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives."). The requested incentive awards of $10,000 each for named Plaintiffs are reasonable. Plaintiffs worked with Counsel to investigate the case, responded to written discovery requests, were kept abreast of the proceedings, reviewed and approved the proposed settlement.

Moreover, the amount requested is consistent with awards approved by courts in this District and elsewhere. *See, e.g.*, *Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Craftwood Lumber Co*., 2015 WL 1399367, at*6 (awarding $25,000 service award to plaintiff in TCPA case); *In re Sw. Airlines Voucher Litig.*, No. 110CV-8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (awarding $15,000 service awards to both named plaintiffs); *Heekin v. Anthem, Inc*., No. 05-cv01908-TWP-TAB, 2012 WL 5878032 at *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection).

**4. The Settlement Should be Finally Certified**

"The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement." Fed. R. Civ. P. 23 advisory committee notes to 2018 amendments. "The fact that the parties have reached a settlement is relevant to the class-certification analysis." *Burnett v. Conseco Life Ins. Co.*, No. 1:18-cv-00200-JPH-DML, 2021 WL 119205, at *11 (S.D. Ind. Jan. 13, 2021). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the

case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* (citations omitted). A plaintiff seeking certification of a settlement class must satisfy each requirement of Rule 23(a)--numerosity, commonality, typicality and adequacy of representation-and any one subsection of Rule 23(b). *Id.* at *10-11.

In the Preliminary Approval Order, the Court conditionally granted class certification for settlement purposes only. Dkt. No. 96. Since that time, there have been no developments that would alter this conclusion. For all the reasons set forth in Plaintiffs preliminary approval briefing and the Preliminary Approval Order, the Court should finally certify the Settlement Class

## VII. CONCLUSION

Plaintiff has negotiated a fair, adequate, and reasonable settlement that guarantees Class Members significant relief. The Settlement Agreement is well within the range of reasonable results. For these and the above reasons, Plaintiffs respectfully request this Court certify the class for settlement purposes and grant her Motion for Final Approval of Class Action Settlement.

Date: September 23, 2025

Respectfully Submitted,

By: /s/ *Kiley L. Grombacher*

Kiley L. Grombacher, Esq.
BRADLEY/GROMBACHER LLP
kgrombacher@bradleygrombacher.com
31365 Oak Crest Drive, Suite 240
Westlake Village, CA 91361
Telephone: (805) 270-7100

Bryan F. Aylstock
baylstock@awkolaw.com
E. Samuel Geisler (Ill. Bar No. 6305996)
sgeisler@awkolaw.com
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
Facsimile: (850) 916-7449

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 23, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

Respectfully submitted,

/s/Kiley L. Grombacher
Kiley L. Grombacher